IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAVAGO AMERICAS LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action 4:19-00036 |
| v. | § | |
| | § | |
| VINMAR INTERNATIONAL, LTD., et al., | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

# MOTION TO CLARIFY INJUNCTION

Defendants Vinmar International, Ltd. ("Vinmar"), Premier Polymers, LLC ("Premier") and Vinmar Polymers America, LLC ("VPA"), Kirt Dmytruk, John Siebenall, and John Ward (collectively "Defendants") move for clarification of the preliminary injunction issued on January 16, 2019 by the Connecticut district court and extended by this Court. At the last hearing, the Court declined to consider any amendment to the injunction. *See* Dkt. 118. The time is now ripe to clarify the injunction and allow the Defendants to compete properly in the marketplace.

**Background**

A long-running rivalry between these competitor-parties exists. This case is by no means the only battle. In 2009, Premier, the predecessor of VPA, was formed at the behest of a major supplier to Ravago to create more competition in the U.S. polymer distribution market. Since that time, Ravago has been attempting to destroy Premier.

### 1. The Business.

The virulence of Ravago's efforts is curious in light of the nature of Premier's business. Premier then did not make any products, nor does VPA now do so. They do not own or operate any blending or compounding facilities to be able to blend component products together to form new

1

ones. They do not change the chemical composition of any product. They have no proprietary formulas or any need for any. All they do is buy manufactured polymers in bulk, re-package those polymers in the same or different package sizes as requested by customers, and then re-sell the product.

### 2. Prior Injunctions against Ravago.

**<u>Wendt Litigation.</u>** As soon as Premier began competing, Ravago began attempting to undercut it by hiring away Premier employees. In 2015, for example, Premier obtained a permanent injunction in this very Court against one of its former employees, Gregory Wendt, who had been hired by a Ravago affiliate. The injunction prevented disclosure of Premier's confidential information. *Premier Polymer, LLC v. Gregory Wendt* (No. 4:15-cv-01812, S.D. Tex.), Mem. Op. & Order, Dkt. 38.[1] In that case, Wendt admitted that he had provided confidential information to the Ravago affiliate while he was discussing possible employment with the affiliate and was also soliciting Premier customers for the affiliate. *Id.*, at 3, attached as Exhibit A. This Court found that Wendt's actions violated his confidentiality and non-solicitation obligations to Premier. *Id.*

**<u>Reilly Litigation.</u>** Similarly, in 2018, Premier sued another former employee, along with Ravago, in Texas state court, claiming misappropriation of trade secrets. *Premier Polymers, LLC v. Reilly, et al* (No. 2018-47163, 80th District Court, Harris County, Texas). Deposition testimony in that case establishes that Ravago encouraged the taking of Premier's confidential information and the violation of Premier's non-solicitation agreement. Premier has also alleged in that lawsuit that Ravago entered into illegal agreements with its two largest competitors not to hire each other's employees. See Exhibit B, Second Amended Petition at ¶¶39-57 (public version redacted). Ravago asked but Premier refused

---

[1] Premier is a predecessor entity to VPA, the entity that Dmytruk joined when he left Ravago's employ. In other words, Premier was already in the U.S. polymer distribution business for many years before Dmytruk arrived. Vinmar had already been in the international polymer distribution business for over 40 years before Dmytruk was hired.

to be party to the "no poach" arrangement. As a result of the illegal arrangement, in the past six years, Ravago has hired no employees of the other two competitors. It has, however, poached three of Premier's top employees. In each instance, Ravago instructed the employees to disregard their restrictive covenants and confidentiality obligations to Premier. One of the employees was Wendt, discussed above.

In its appeal from the denial of its anti-SLAPP motion in the *Reilly* matter, Ravago dismisses the notion that identity of customers in this industry is even secret. It said Premier "failed to show that potential customers for commodity polymers and plastics and plastics [sic] cannot be readily identified by someone outside of its employ or that the customers' needs cannot be ascertained simply by asking the customer themselves."[2]

Ravago sings an entirely different tune in this case.

### 3. The Dmytruk Agreement and Injunction.

Kirt Dmytruk's employment agreement with Ravago contains two provisions that are relevant to this motion: (1) a non-solicitation provision and (2) a provision prohibiting use after employment of Trade Secrets and Confidential Information, as those terms are defined in the employment agreement. On the former, Dmytruk agreed not to solicit Ravago's customers, suppliers, and employees for 18 months after leaving Ravago's employ. Dkt. 1, Ex. A, at §§7,8. On the latter, Dmytruk agreed not to disclose or disseminate to third parties Ravago's confidential information for two years after he left Ravago. *Id.*, §3. Dmytruk agreed not to disclose or disseminate Ravago's trade secrets to third parties during his employment with Ravago or so long as the information remained a trade secret. *Id.*, §3. The injunction entered in this case arises from these provisions.

---

[2] No. 14-19-00336-CV, *Reilly v. Premier Polymers, LLC*, Brief of Appellants at 29, attached as Exhibit C.

Dmytruk comes to this Court for clarification of his ongoing obligations with respect to this Court's preliminary injunction.

**<u>Argument</u>**

Kirt Dmytruk left Ravago August 8, 2018. Thus, by the terms of his agreement, the prohibition on solicitation ended February 8, 2020. This Court extended the injunction by three months (*see* Dkt. 77), which ended May 8, 2020. After 21 months, given his compliance with the Court's injunction, which exceeds the length of his contract prohibition, Dmytruk now asks to be free from his non-solicitation covenant with Ravago, so long as he does not use Ravago's alleged trade secrets or confidential information.

Defendants also ask the Court to clarify the obligations of John Ward and Jeff Siebenaller. Siebenaller had no non-solicitation agreement with Ravago. Ward's non-solicitation obligations ended on March 14, 2020. *See* Dkt. 1, ¶173 (stating that Ward resigned from Ravago on September 14, 2018); *id.*, Ex. B §§7,8 (18-month non-solicitation provisions). Defendants ask that the Court clarify that Ward and Siebenaller (or any other Vinmar employee, for that matter) may contact any customer, supplier, or employee whom they choose, including so-called Ravago customers, suppliers, or employees. If such contact is not initiated by Dmytruk, Defendants do not perceive that such conduct would violate the terms of the existing injunction. Defendants' concern is that the phrasing of the current injunction creates the possibility of false assertions that contacts initiated by Ward or Siebenaller were done "in concert with" Dmytruk. And Ravago seems to have taken the position that any contact by Ward or Siebenaller with any Ravago employees, even social contacts, is prohibited.

Ravago should not be entitled to unending protection against competition from Vinmar and VPA. Ravago employees should have the ability to work with Dmytruk, if they so choose. Both the non-solicitation provision between Dmytruk and Ravago and the Court's injunction have expired. However, in an abundance of caution and desiring complete compliance with the Court's order in

letter and spirit, Defendants come to this Court for clarification of the obligations of Dmytruk, Ward, and Siebenaller.

While Dmytruk denies that he has used and is using Ravago's trade secrets, should Ravago believe the opposite is true, it has an adequate remedy at law: this lawsuit and monetary damages.[3] Finally, there is no dispute that Dmytruk's contractual prohibition from using Ravago trade secrets persists. Because there is an adequate remedy at law in breach of contract, there is no need for an ongoing injunction prohibiting the same conduct. *Instant Air Freight Co. v. C.F. Air Freight Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (quoting *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1964) (no inadequate remedy at law constituting irreparable harm when money damages would compensate the alleged harm)).

To obtain damages, Ravago—like any other plaintiff—should have to prove its case. It should have to prove that its information constitutes trade secrets; it should have to prove that Defendants are in possession of and have used those trade secrets; and it should have to prove actual damages arising from use of that information. *See, e.g.,* 18 U.S.C. §1836. It will not be able to do so. But, nonetheless, the process is ongoing. As the parties reported separately, Defendants are cooperating with Mr. Ball and Ravago to turn over images of devices for forensic analysis. In addition, Defendants are working with Ravago to produce more documents and communications.[4] And while there is no doubt that Ravago will never be satisfied, at some point, Ravago must be called to prove its case that Defendants have used and are using Ravago trade secrets. In the meantime, the terms of the contractual non-solicitation agreement have expired. The Court's extension has expired. Dmytruk and VPA should be able to lawfully compete with Ravago.

---

[3] Ravago has yet to identify a single customer or sale that it has lost based on Dmytruk's alleged violations of his obligations under his agreement.
[4] To date over 5,250 pages have already been produced.

## **Conclusion and Request for Relief**

For these reasons, Defendants respectfully ask that the Court rule that: (1) the preliminary injunction is amended and the restrictions against solicitation previously imposed upon Dmytruk and those working with him are lifted entirely; (2) Dmytruk, Ward, and Siebenaller may buy from suppliers and sell to customers anywhere so long as they do not use Ravago's trade secrets or confidential information to do so; and (3) the restrictions against contact and solicitation of Ravago employees and personnel are lifted entirely.

Respectfully submitted,

/s/ Murray J. Fogler

Murray J. Fogler
Attorney-in-Charge
State Bar No. 07207300
Federal (S.D. Tex) Bar No. 2003
Michelle E. Gray
State Bar No. 24078586
Federal (S.D. Tex.) Bar No. 892270
FOGLER, BRAR, O'NEIL AND GRAY, LLP
909 Fannin, Suite 1640
Houston, TX 77010
Telephone: 713-481-1010
Facsimile: 713-574-3224
Email: mfogler@foglerbrar.com
mgray@foglerbrar.com

Christina E. Ponig
Federal Bar No. 600217
Texas Bar No. 24041706
ORRICK, HERRINGTON & SUTCLIFFE LLP
609 Main, 40th Floor
Houston, TX 77002
Tel: 713.658.6415
Fax: 713.658.6401
Email: cmaccio@orrick.com

**ATTORNEYS FOR DEFENDANTS VINMAR INTERNATIONAL, LTD., PREMIER POLYMERS, LLC and VINMAR POLYMERS AMERICA, LLC**

/s/ David Gerger
David Gerger
Texas Bar No. 07816360
GERGER KHALIL HENNESSY & MCFARLANE, LLP
1001 Fannin, Suite 2450
Houston, Texas 77002
Telephone: 713.224.4400
Facsimile: 713.224.5153
Email: dgerger@gkfirm.com

**ATTORNEY FOR DEFENDANTS KIRT DMYTRUK, JOHN SIEBENALLER, AND JOHN WARD**

7

**CERTIFICATE OF CONFERENCE**

I certify that, on June 4, 2020, co-counsel in this matter advised counsel for Plaintiff of Defendants' plan to file this motion, and counsel for Plaintiff acknowledged receipt of Defendants' message. Given the prior positions of Plaintiff on this issue before the Court, Defendants believe that Plaintiff is opposed to the relief requested in this motion.

s/Christina E. Ponig
Christina E. Ponig

**CERTIFICATE OF SERVICE**

I certify that, on June 5, 2020, I served counsel of record for Plaintiff with this Motion to Clarify Injunction through the Court's electronic filing system.

s/Christina E. Ponig
Christina E. Ponig
